## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEVEN C. THOMAS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1384** |
| **STEVEN RADER, WARDEN** | **SECTION "I"(2)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Steven C. Thomas, is a convicted inmate currently incarcerated in

the Dixon Correctional Institute in Jackson, Louisiana.[2]  Thomas was charged by bill of

information in Jefferson Parish on May 11, 2006, as a felon in possession of a weapon.

The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> At trial, Officer Leon James and Deputy Harley Smith, both with the
> Jefferson Parish Sheriff's Office testified that, on May 1, 2006, at
> approximately 8:00 p.m., they were on proactive patrol in the Woodmere
> subdivision on the Westbank of Jefferson Parish, a high crime area.  Officer
> James and Deputy Smith both testified that they saw the Defendant and
> another individual, later identified as Harold Banks, standing near an
> apartment building, located near 2241 Alex Korman Boulevard, which
> displayed a no loitering sign.
>     According to Officer James, one of the individuals, later identified
> as the Defendant, appeared to be flagging down motorists.  Officer James
> testified that he thought the Defendant was trying to get the attention of the
> driver of a vehicle on the street.  According to Officer James, he did not
> observe the Defendant with any weapons, contraband, or money in his
> hand.  Both Officer James and Deputy Smith testified that no vehicle
> stopped in response to the Defendant. Subsequently, Officer James and his
> partner exited their marked police vehicle to investigate.  Deputy Smith
> testified that he intended to question the Defendant to determine whether
> he was loitering, and because he was flagging down vehicles.
>     Both Officer James and Deputy Smith testified that, as they started
> to approach, the Defendant and Banks noticed them, and the Defendant
> turned around and started to walk away.  Deputy Smith testified that he saw
> the Defendant quickly place his hand under his shirt and move it around to
> his back. Deputy Smith testified that he ordered the Defendant to stop,
> return to the police vehicle, and place his hands on it. The Defendant
> complied.  According to Deputy Smith, because he did not know what the

_____

[2]Rec. Doc. No. 1.

Defendant reached for under his shirt, he conducted a Terry pat-down for weapons for officer safety.

Deputy Smith testified that he initially felt the front pockets of the Defendant's outer clothing even though he had seen Defendant's hand move to the back. During the pat-down, he felt a large bulge in the Defendant's right front pocket. Although he testified that he did not at that time think it was a weapon, he reached into the Defendant's pants pocket and retrieved the object. At trial, Deputy Smith testified that the object he recovered from the Defendant's pocket was marijuana.

Deputy Smith testified that he continued searching the Defendant and felt "a hard object in the [Defendant's] waistband." Deputy Smith testified that he "retrieved the hard object." Deputy Smith identified, in court, the 9–millimeter Luger he recovered from the Defendant's waistband. According to Deputy Smith, after the gun and marijuana were recovered, the Defendant told him that the gun belonged to his friend.

Larry McGaha, the owner of the building located at 4221 Alex Korman, testified that to his knowledge the Defendant was a resident of the building in May 2006. McGaha also testified that the building has never had a "no trespassing" sign posted on it since he bought it in 1991.

Kendra Camese, and Jameiss Dillon, former neighbors of the Defendant, and Yamini Nukhtar testified for the defense, all stating that the building Defendant was standing in front of when stopped has never had a "no loitering" sign posted on it. Camese and Dillon testified that the Defendant was not waving at cars, and he did not try and walk off when the officers arrived. Rather, as soon as the officers exited their vehicle, they told the Defendant to put his hands on the officer's car. The officer immediately searched the Defendant. They also testified that they did not see the officer take anything out of the Defendant's pocket and did not see them find a gun on the Defendant.

State v. Thomas, 8 So.3d 646, 649-50 (La. App. 5th Cir. 2009); State Record Volume 1

of 4, Louisiana Fifth Circuit Court of Appeal Opinion, 08-KA-521, January 27, 2009.

The state trial court held hearings on Thomas's motion to suppress the evidence on October 3 and 4, 2006.[3]  By written judgment issued October 5, 2006, the court denied the motion finding that the officers had reasonable suspicion for the initial stop and additional basis for suspicion and cause for the search when Thomas reached under his shirt.[4] The Louisiana Fifth Circuit denied defense counsel's subsequent writ application.[5]

Thomas later was tried before a jury on March 13, 2007, and was found guilty as charged.[6]  The state trial court sentenced him on April 11, 2007, to 13 years in prison without benefit of parole, probation or suspension of sentence.[7]  Thomas's counsel filed a notice of appeal, which was later dismissed by the trial court on February 13, 2008, on

---

[3]St. Rec. Vol. 1 of 4, Motion to Suppress, 10/3/06; Motion Hearing Minutes, 10/3/06; Motion Hearing Minutes, 10/4/06; St. Rec. Vol. 2 of 4, Transcript of Motion to Suppress Hearing, 10/3/06; Transcript of Motion to Suppress Hearing, 10/4/06.

[4]St. Rec. Vol. 1 of 4, Trial Court Judgment, 10/5/06.

[5]St. Rec. Vol. 1 of 4, 5th Cir. Order, 06-K-845, 12/12/06; Copy of 5th Cir. Writ Application, 11/7/06.

[6]St. Rec. Vol. 1 of 4, Trial Minutes, 3/13/07; Verdict Form, 3/13/07; St. Rec. Vol. 3 of 4, Trial Transcript (Volume I), 3/13/07; St. Rec. Vol. 2 of 4, Trial Transcript (Volume II), 3/13/07.

[7]St. Rec. Vol. 1 of 4, Sentencing Minutes, 4/11/07; St. Rec. Vol. 2 of 4, Sentencing Transcript, 4/11/07.

motion of the State.[8]  The state trial court later granted Thomas leave to file an out of time appeal.[9]

On direct appeal, Thomas's appointed counsel raised two assignments of error:[10] (1) The state trial court erred in denying the motion to suppress because the officers had no reasonable suspicion to stop Thomas making the pat-down search invalid. (2) The state trial court erred in limiting the defense presentation during voir dire and closing arguments of mistake of fact and/or law to show lack of intent based on Thomas's lack of knowledge that he could not carry a gun more than ten years (10) after his prior conviction.  On January 27, 2009, the Louisiana Fifth Circuit affirmed the conviction and sentence, finding no merit to either error and that the argument of lack of probable cause could not be raised for the first time on appeal.[11]  On its error patent review, the court remanded the matter for the trial court to advise Thomas of the delays for seeking post-conviction relief.  The trial court complied on February 1, 2009.[12]

---

[8]St. Rec. Vol. 1 of 4, Notice of Appeal, 4/11/07; Motion to Dismiss Appeal, 11/29/07; Minute Entry, 2/13/08; Trial Court Judgment, 4/7/08.

[9]St. Rec. Vol. 1 of 4, Trial Court Order, 4/4/08.

[10]St. Rec. Vol. 2 of 4, Appeal Brief, 2008-KA-0521, 9/15/08.

[11]State v. Thomas, 8 So.3d at 646; St. Rec. Vol. 1 of 4, 5th Cir. Opinion, 08-KA-521, 1/27/09.

[12]St. Rec. Vol. 1 of 4, Notice to Defendant, 2/1/09.

On February 6, 2009, Thomas submitted a timely writ application to the Louisiana Supreme Court seeking review of his appeal without designation any particular errors or grounds for relief.[13]

While this writ application was pending, Thomas also submitted an application for post-conviction relief to the state trial court, arguing that his conviction was unconstitutional because of an illegal stop and search.[14]  The state trial court denied the application pursuant to La. Code Crim. P. art. 930.4, finding that the claims had already been addressed on direct appeal.[15]  Thomas did not seek review of this order in the Louisiana Fifth Circuit.

Instead, Thomas later amended his pending Louisiana Supreme Court writ application with supplements that included arguments that he was subjected to an illegal stop, that the officers created and presented fraudulent evidence in an effort to justify the stop and that the officers lacked credibility.[16]  On December 18, 2009, the Louisiana Supreme Court denied the writ application without stated reasons.[17]

---

[13]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 09-KO-391, 2/18/09 (dated 2/6/09); St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2009-KO-391, 2/18/09.

[14]St. Rec. Vol. 1 of 4, Uniform Application for Post-Conviction Relief, 7/1/09 (dated 3/31/09).

[15]St. Rec. Vol. 1 of 4, Trial Court Order, 8/24/09.

[16]St. Rec. Vol. 4 of 4, Supplement, 9/25/09.

[17]State v. Thomas, 23 So.3d 928 (La. 2009); St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2009-KO-0391, 12/18/09.

Thomas's conviction became final 90 days later, on March 18, 2010, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Several months later, on July 5, 2010, Thomas submitted a copy of an application for a supervisory writ to the trial court, which he captioned for the Louisiana Supreme Court. The state trial court construed the pleading as a motion for relief to which he was not entitled and denied it.[18] In the meantime, on July 11, 2010, Thomas mailed a letter to the Louisiana Supreme Court in which he sought to explain why his briefing to the court may not have been sufficient to outline his claims.[19] The letter was received by the court's Central Staff and filed as a request for reconsideration.[20] The letter also allowed him an additional 60 days to supplement the request. The Louisiana Supreme Court denied reconsideration without stated reasons on October 8, 2010.[21]

---

[18]St. Rec. Vol. 1 of 4, Application for Supervisory Writ, 7/8/10 (dated 7/5/10).

[19]Request for Reconsideration, 09-KO-391, 7/16/10 (dated 7/11/10).

[20]St. Rec. Vol. 4 of 4, Central Staff Letter, 09-KO-0391, 7/14/10; Request for Reconsideration, 09-KO-391, 7/16/10 (dated 7/11/10).

[21]State v. Thomas, 46 So.3d 1257 (La. 2010); St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2009-KO-0391, 10/8/10.

II.     FEDERAL HABEAS PETITION[22]

On June 10, 2011, the clerk of this court filed Thomas's petition for federal habeas corpus relief in which he asserts three grounds for relief:[23]  (1) The evidence seized from his person during the pat-down search should not have been admitted and the trial court erred in finding that the deputy had reasonable suspicion to stop in that the police officer investigated at close range allowing for a legal outer clothes frisk.[24] (2) The state trial court erred in denying the motion to suppress because the evidence was illegally retrieved. (3) The state trial court erred in limiting the presentation of the defense of mistake of fact and/or law. (4) The petition also requested errors patent review.

The State filed a response in opposition to Thomas's petition, alleging that the petition was not timely filed, that Thomas failed to exhaust available state court remedies as to some of his claims, and that his Fourth Amendment claims were otherwise barred from federal review.[25]

---

[22]Thomas filed a prior federal petition in this court under Civ. Action No. 09-3233"I"(2), which was dismissed without prejudice for failure to exhaust state court remedies.

[23]Rec. Doc. No. 1-1, p.7.

[24]Thomas separated this issue into three issues and then combined the allegations for purposes of his argument.  Rec. Doc. No. 1-1, p. 7.

[25]Rec. Doc. No. 7.

Thomas filed a traverse in reply to the State's response.[26]  He argues that he is entitled to equitable tolling because he was misled by the Louisiana Supreme Court about the claims actually presented in his 2009 writ application. He also alleges that the supreme court misled him when he attempted to gather information and his letter was addressed as a request for reconsideration.  He also claims that he was not aware of the law or the specific deadlines addressed in the State's opposition.  Finally, Thomas also argues that he did not receive proper review of his claims in the state appellate court, because the court did not consider the factual arguments in support of his amended claims.

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[27] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to

---

[26]Rec. Doc. No. 10.

[27]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

Thomas's petition, which, for reasons discussed below, is deemed filed in this federal court on or before May 26, 2011.[28]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Thomas's petition is untimely and that some of his claims were not exhausted in the state courts. The State argues that the request for rehearing submitted to the Louisiana Supreme Court on July 11, 2010 was not timely filed, did not impact the finality of his conviction, and did not entitle him to tolling under the AEDPA. While the submission was not timely presented to the Louisiana Supreme Court within

_____

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Thomas's petition was filed by the clerk of this court on June 10, 2011, when the filing fee was paid. Thomas dated the signature on the memorandum in support of his petition on May 26, 2011. This is the earliest date on which he could have delivered the set of pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

14 days of its initial ruling, La. S. Ct. Rule IX, § 6, a member of that court's central staff wrote to Thomas on July 14, 2010, stating:[29]

> Your letter was received and filed as a reconsideration to your writ application denial of December 18, 2009 under the above docket number. You should send your supplemental application (unfiled documents previously sent back to you) as soon as you are able, preferably within 60 days from the date of this letter. Please enclose this letter with your application.

Construed broadly, it appears from the record that Thomas wrote an informal letter to the court regarding the denial of his 2009 writ application and, based on the response of the court's Central Staff, he was given leave to file the letter as a request for reconsideration with an additional 60-days to supplement the request. The Louisiana Supreme Court's initial response to Thomas's letter came in the form of a response from court staff, not an order from the court itself. One possible interpretation of the letter from the court's staff was to provide Thomas leave to file the request for reconsideration out of the normal time period. Under these circumstances, I find that Thomas should be permitted equitable tolling for the period during which that request was pending before the Louisiana Supreme Court. With this period, from July 11, 2010 through October 8, 2010, tolled, Thomas's current federal petition was timely filed under the AEDPA. I cannot accept the State's limitations defense.

---

[29]St. Rec. Vol. 4 of 4, Central Staff Letter, 7/14/10.

The State also alleges that Thomas's petition is a mixed petition, presenting at least two claims which were not exhausted in the state courts. My review of the many supplements to his Louisiana Supreme Court writ application convinces me that Thomas has raised all of his federal claims in that court. He did not, however, raise the arguments regarding the officers' credibility and the finding of reasonable cause by the state trial court to the Louisiana Fifth Circuit before presenting it to the higher court. This would render these claims unexhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Baldwin v. Reese, 541 U.S. 27, 32 (2004). Nevertheless, because the Fourth Amendment claims are barred from review by this court and the remaining claims are without merit, I will address them without requiring full exhaustion. 28 U.S.C. § 2254(b)(2).

IV.   UNLAWFUL STOP AND SEARCH (CLAIMS ONE AND TWO)

Kendall argues that the state trial court should have suppressed the evidence seized from him on grounds that the search and arrest were the result of an illegal investigatory stop because the officers had no probable cause or reasonable suspicion and during which he was denied his Fourth Amendment rights in violation of Terry v. Ohio, 392 U.S. 1 (1968).

The availability of federal habeas corpus relief for an alleged Fourth Amendment violation is substantially restricted under the United States Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976).

In <u>Stone</u>, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Id.</u> at 494. A "full and fair hearing means that 'where there are <u>facts</u> in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'" <u>Davis v. Blackburn</u>, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting <u>O'Berry v. Wainwright</u>, 546 F.2d 1204, 1213 (5th Cir. 1977) (emphasis in original)). The bar of <u>Stone v. Powell</u> also applies despite any state trial court error in deciding the merits of petitioner's Fourth Amendment claim. <u>Andrews v. Collins</u>, 21 F.3d 612, 631-32 (5th Cir. 1994); <u>Christian</u>, 731 F.2d at 1199 n.1; <u>Swicegood v. Alabama</u>, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. <u>Stone</u>, 428 U.S. at 494-95 n.37; <u>Bell v. Lynaugh</u>, 828 F.2d 1085, 1091-92 (5th Cir. 1987). "[I]n the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," petitioner's claim cannot succeed. <u>Williams v. Brown</u>, 609 F.2d 216, 220

13

(5th Cir. 1980); Christian v. McKaskle, 731 F.2d 1196, 1199 (5th Cir. 1984).  In this case, Thomas does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims.  Moreover, "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."  Bailey v. Cain, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ( Duval, J.) (order adopting Report and Recommendation).

In addition, the record demonstrates that Thomas received appropriate review in the state courts.  The record establishes that on October 3 and 4, 2006, the state trial court held an evidentiary hearing on Thomas's motion to suppress, at which Thomas was represented by counsel and was able to challenge the actions of the arresting officers.[30] The state trial court issued written findings supporting its denial of the motion.[31]  The Louisiana Fifth Circuit also reviewed and denied defense counsel's subsequent writ application.[32]

The Louisiana Fifth Circuit again reviewed the trial court's denial of the motion to suppress on direct appeal.  Contrary to Thomas's arguments, the court thoroughly

---

[30]St. Rec. Vol. 1 of 4, Motion to Suppress, 10/3/06; Motion Hearing Minutes, 10/3/06; Motion Hearing Minutes, 10/4/06; St. Rec. Vol. 2 of 4, Transcript of Motion to Suppress Hearing, 10/3/06; Transcript of Motion to Suppress Hearing, 10/4/06.

[31]St. Rec. Vol. 1 of 4, Trial Court Judgment, 10/5/06.

[32]St. Rec. Vol. 1 of 4, 5th Cir. Order, 06-K-845, 12/12/06; Copy of 5th Cir. Writ Application, 11/7/06.

14

reviewed the facts and testimony related to the stop and search presented at the hearings and at the trial.[33]   The court resolved that the officers had a reasonable, objective and particularized basis for stopping Thomas and conducting the pat-down frisk at the scene, which legally led to the discovery of the gun and marijuana.[34]   The court also noted that, while the issue of probable cause to arrest had not been properly preserved for appeal, the claim was moot in light of its ruling on the reasonable suspicion to make the stop and conduct the pat-down search, which ultimately gave the officers probable cause to make the arrest.[35]

The Louisiana Supreme Court is presumed to have relied upon the same grounds as the Louisiana Fifth Circuit's reasoned opinion in denying Thomas's related writ application.  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).  As discussed previously, the Louisiana Supreme Court also later considered Thomas's detailed request for reconsideration, which was denied without stated reasons.

---

[33]State v. Thomas, 8 So.3d at 652.

[34]Id., at 653.

[35]Id., at 651, n.8.

After reviewing the record, I find that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." Andrews, 21 F.3d at 631. The State provided Thomas, who was assisted by counsel, with the opportunity to litigate his Fourth Amendment claims fully and fairly. The fact that he may disagree with the state courts' decision to deny relief is not sufficient to overcome the Stone bar to federal review. Janecka v. Cockrell, 301 F.3d 316, 320-21 (5th Cir. 2002). Accordingly, Stone bars review of this claim. Id.; Williams v. Collins, 16 F.3d 626, 637-38 (5th Cir. 1994). This claim for federal habeas relief must be dismissed.

V.    LIMITS ON PRESENTATION OF DEFENSE OF MISTAKE OF FACT AND/OR LAW (CLAIM NO. 3)

Thomas alleges that the state trial court erred, because it did not allow his attorney to examine potential jurors during voir dire and to argue to the jury during his closing about his lack of intent based on mistake under La. Rev. Stat. Ann. §§ 14:16, 17. Specifically, he claims that counsel should have been allowed to argue to the jury that Thomas was unaware that he could not carry a gun ten (10) years after his previous conviction. Thomas contends that this error prejudiced the verdict, and the error was not harmless.

Thomas raised this claim on direct appeal to the Louisiana Fifth Circuit.  The court found that the trial court did not limit defense counsel's ability to present and explain the mistake of fact/law defense during voir dire or in his closing.  The court recited specific instances where counsel was allowed to discuss and question the voir dire panel about the defense.  The court also reviewed the closing arguments and could not find where the trial court might have stifled counsel's discussion of the mistake or lack of intent argument.  The court, therefore, specifically found that counsel was allowed to argue the defense.

The court went on to hold that, even if the presentation was restricted in some way, there was no error.  The court resolved that, under Louisiana law, the felon in possession of a firearm charge was a charge of general intent that had only two elements of proof, possession of a firearm and that not more than ten (10) years had elapsed since completion of the punishment on the prior felony.  As such, the court resolved that there could be no error arising from any restriction imposed during voir dire or closing arguments.

To the extent Thomas argues that the state courts' findings violated the requirements of Louisiana law regarding the presentation of the mistake defense, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  Wilkerson v. Whitley, 16 F.3d 64, 67 (5th

Cir. 1994) (quotation omitted); <u>see also</u> <u>Swarthout v. Cooke</u>, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).  This court's analysis focuses instead on due process considerations, and due process requires that the court grant habeas relief when the errors of the state court make the underlying proceeding fundamentally unfair.  <u>Neyland v. Blackburn</u>, 785 F.2d 1283, 1293 (5th Cir. 1986).

  Federal law is settled that the due process rights of an accused have been adequately protected if he has been given the opportunity to present his defense, to cross-examine witnesses and to present testimony.  <u>See</u>, <u>Washington v. Texas</u>, 388 U.S. 14, 20 (1967); <u>Pointer v. Texas</u>, 380 U.S. 400 (1965); <u>In Re Oliver</u>, 333 U.S. 257 (1948).  The Supreme Court has held that "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" (citations omitted) <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) (quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984)).  The Court recognized further that "an essential component of procedural fairness is an opportunity to be heard."  <u>Id</u>.  The right, however, is not unfettered or absolute.  <u>See</u>, <u>Montona v. Egelhoff</u>, 518 U.S. 37, 62 (1996).  A violation will only occur where the defendant is denied the opportunity to cross-examine or is prevented from putting a

18

witness on the stand or from introducing evidence.  <u>Brazley v. Cain</u>, 35 Fed. App'x 390,

2002 WL 760471, at *6 (5th Cir. Apr. 16, 2002) (quoting <u>United States v. Scheffer</u>, 523

U.S. 303, 329 n.16 (1998)).  A trial judge has "'wide latitude to' exclude evidence that

is 'repetitive ..., only marginally relevant' or poses an undue risk of 'harassment,

prejudice, [or] confusion of the issues.'"  <u>Crane</u>, 476 U.S. at 689-90 (quoting <u>Delaware</u>

<u>v. Van Arsdall</u>, 475 U.S. 673, 679 (1986)).

In this case, Thomas does not allege that he was denied an opportunity to present

evidence, cross-examine a witness, or call a witness.  His claim in this court revolves

around the alleged limitation on the argument of counsel (not evidence) about the

mistake defense.  Giving deference to the findings of the Louisiana appellate court, and

based upon my own review of the trial transcripts, Thomas has not shown that he was

denied the opportunity to raise the mistake defense at his trial.  In fact, the trial court

allowed the defense and sought only to have counsel recognize that the defense actually

argued was mistake of law, not mistake of fact.

During voir dire, Thomas's counsel spoke to the panel of potential jurors about La.

Rev. Stat. Ann. § 14:16, which defines the defense of mistake of fact as a defense to the

element of intent.[36]  While doing so, the State objected that counsel was reading the

statute on mistake of fact when he was actually arguing that Thomas's mistake was a

---

[36]St. Rec. Vol. 3 of 4, Trial Transcript (Volume I), pp. 41-47, 3/13/07.

mistake of law.  After an extensive discussion at the bench, the court sustained the objection and instructed defense counsel that the defense he was arguing, that Thomas did not know that he could not carry the weapon after ten (10) years, fell under mistake of law defense pursuant to La. Rev. Stat. Ann. § 14:17.  With this clarification, the court allowed counsel to proceed with his argument and voir dire examination of the panel.[37]

The record demonstrates that defense counsel was allowed to proceed with his explanation of the proposed defense, mistaken knowledge of the time period under the law, and with questions to the jury panel about their understanding of the proposed defense.  Counsel also addressed the timing of the possession of the weapon during closing arguments to the jury.[38]  The record supports the findings made by the state appellate court that no limits were imposed on the defense and, thus, no error was made by the state trial court.

Thomas has not demonstrated that the trial court violated his rights or unconstitutionally limited his opportunity to present his defense.  Counsel made his arguments regarding Thomas's misunderstanding of the time during which he had to refrain from carrying a weapon.  No matter what label was placed on the defense, the argument was made and presented to the jury.

---

[37]Id., pp. 46-47.

[38]Id., pp. 111-13.

20

Thomas has not shown that the state courts' denial of relief on this issue was contrary to, or an unreasonable application, of Supreme Court law.  Thomas is not entitled to relief on this claim.

VI.     ERRORS PATENT ON THE RECORD

Thomas also requests that this federal habeas court conduct an errors patent review of the record.  A review for errors patent on the record is a state law appellate procedure predicated on a state statute.  Ellison v. Day, 62 F.3d 396, 1995 WL 449674 at *1 (5th Cir. July 14, 1995) (Table, Text in Westlaw).  Thomas received an errors patent review in the Louisiana Fifth Circuit, which resulted in a partial remand for the state trial court to provide notice to him of the state post-conviction delays.

As noted previously in this report, a matter of state law presents a federal habeas issue only if it involves a federal constitutional issue.  Smith v. McCotter, 786 F.2d 697, 702-03 (5th Cir.1986).  Thomas has not specified or alleged any such federal violation under this claim, and his other challenges to his conviction have been addressed elsewhere in this report.  He has not established that denial of relief on any of his specific claims warrant federal habeas relief.  This claim is also without merit.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of Steven C. Thomas for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[39]

New Orleans, Louisiana, this __31st__ day of October, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[39]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.